UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TERRENCE J. FIORITO,

                Plaintiff,

- against -

JANET DIFIORE, *et al.*,

                Defendants.

13-CV-2691 (CS)

**OPINION & ORDER**

---

Seibel, J.

Before the Court is Defendants' Motion to Dismiss the Amended Complaint, filed on April 17, 2014. (Doc. 26.) For the reasons stated below, the Motion is GRANTED.

**I.**    **Background**

For purposes of this Motion, the Court accepts as true the facts (but not the conclusions) alleged by Plaintiff in his Amended Complaint ("Compl."), (Doc. 15).

Plaintiff Terrence J. Fiorito is a retired school athletic director. (Compl. ¶ 10.) Defendant Janet DiFiore is the District Attorney for Westchester County and Defendants John M. George, Paul Scharf, Doreen Lloyd and Amit Parab are all Assistant District Attorneys for Westchester County.[1] (*Id.* ¶¶ 4-8.)

Plaintiff alleges that on the evening of February 27, 2010, while attending a high school basketball tournament, a man charged toward him while screaming insults and then lunged at him. (*Id.* ¶¶ 12, 14.) A scuffle ensued and the man was dragged away from Plaintiff by several people, including the tournament's security guards. (*Id.* ¶ 12.)

---

[1] Plaintiff has also sued John Does 1-20, "other employees of the Westchester County District Attorney's Office." (Compl. ¶ 9.)

1

Plaintiff later learned that the man was Stephen Kelly, the husband of Diane Ramos-Kelly, who at that time was the Superintendent of the Valhalla Union Free School District.  (*Id.* ¶ 14.)  Although Plaintiff had never met Mr. Kelly before, Plaintiff and Ms. Ramos-Kelly had worked together when Plaintiff was an athletic director and had a strained relationship; indeed, Plaintiff had previously sued Ms. Ramos-Kelly over a job-related matter.[2]  (*Id.*)

Immediately after the altercation, Plaintiff was interviewed several times by security officers and he requested to file a report; Plaintiff also returned to the tournament venue the following day and gave a statement.  (*Id.* ¶¶ 17-18.)  On March 1, 2 and 4, 2010, Plaintiff provided information about the altercation to detectives, which culminated in their preparation of a Violation Information, which Plaintiff signed.  (*Id.* ¶¶ 19-21.)

On April 22, 2010, Mr. Kelly appeared in court and entered a plea of not guilty.  (*Id.* ¶ 24.)  The court scheduled Mr. Kelly's trial for May 10, 2010, and issued an Order of Protection prohibiting Mr. Kelly from having contact with Plaintiff.  (*Id.* ¶¶ 25-26.)

The following week, Ms. Ramos-Kelly called Defendant Janet DiFiore, the District Attorney of Westchester County, about Mr. Kelly's case.  (*Id.* ¶ 28.)  During this phone call, Ms. Ramos-Kelly, who is allegedly politically connected to and friendly with Defendant DiFiore, allegedly convinced her to "make the case against Kelly 'go away'".  (*Id.* ¶ 29.)  That same day, Defendant DiFiore allegedly instructed Defendant George, the First Deputy District Attorney, to make that happen.  (*Id.* ¶¶ 30-31.)

Defendant George, working together with Defendants Scharf, Lloyd, Parab and others, allegedly executed this plan by manufacturing an administrative policy against prosecuting individuals when the accusatory instrument is signed by only the complainant (and not a law

---

[2] After the incident at the basketball tournament, Plaintiff again sued Ms. Ramos-Kelly, as well as Mr. Kelly, for assault and the intentional infliction of emotional distress (and other claims). (*Id.* ¶¶ 16, 46.) The parties settled that lawsuit in 2012. (*Id.*)

enforcement officer), and used that policy as a pretext to withdraw the Kelly case. (*Id.* ¶¶ 31-38.)  At the next scheduled court hearing on May 10, 2010, Defendant Lloyd, appearing for the District Attorney's office, told the court that the government was withdrawing the Kelly case without prejudice and "turn[ing] the matter over to the Westchester County Police for further investigation." (*Id.* ¶ 41.)  No further investigation was conducted. (*Id.*)[3]

Plaintiff alleges that after Mr. Kelly's attack on him, he feared for his life and was in a fragile psychological state. (*Id.* ¶¶ 13, 18.)  He had long suffered from clinical depression, and after the incident it became increasingly severe. (*Id.* ¶¶ 11, 13).  When Plaintiff learned that Mr. Kelly would not be prosecuted and that the Order of Protection against Mr. Kelly had been vacated as a result of the withdrawal of the criminal case, his depression became "debilitating." (*Id.* ¶¶ 40, 42, 45.)

Based on these allegations, Plaintiff asserts two Equal Protection claims under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the U.S. Constitution.[4]  First, Plaintiff argues that Defendants' decision not to prosecute Mr. Kelly (based on its fabricated policy concerning accusatory instruments) denied Plaintiff his right to equal protection under the law. (*Id.* ¶¶ 47-57.)  Second, Plaintiff argues that Defendants' failure to further investigate (or to ensure that the police would further investigate) the Kelly case also deprived Plaintiff of equal protection. (*Id.* ¶¶ 58-64.)

Defendants move to dismiss these claims on three grounds:  (1) Plaintiff's lack of standing, (2) Defendants' absolute immunity (or alternatively, qualified immunity) as prosecutors and (3) Plaintiff's failure to plausibly allege an Equal Protection claim. (Doc. 27.)

---

[3] Defendants – not surprisingly – present a different view of what happened, which I need not consider to resolve the pending motion.

[4] Plaintiff has withdrawn his third claim for relief under the Due Process Clause. (*See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint ("P's Opp."), (Doc. 29), 7 n.2.)

For the reasons stated below, the Court finds that Plaintiff does not have standing to bring his claims and that, even if he did have standing, Defendants have absolute immunity against the claims. The Court need not reach Defendants' further arguments that Plaintiff fails to state a claim upon which relief can be granted.

## II.   Discussion

### A.   Legal Standards

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A district court lacks such power when the plaintiff does not have standing to bring his or her claim. *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113.

"[A]lthough absolute immunity is an affirmative defense whose availability depends on the nature of the function being performed by the defendant official who is alleged to have engaged in the challenged conduct, the nature of that function is often clear from the face of the complaint." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (internal citations omitted). "In that circumstance, the absolute immunity defense may be resolved as a matter of law on a motion to dismiss the complaint pursuant to Rule 12(b)(6)." *Id.* (*citing Imbler v. Pachtman*, 424 U.S. 409, 416-17 (1976)).

### B.   Article III Standing

Article III of the Constitution limits a federal court's jurisdiction to actual "cases" and "controversies." U.S. Const. art. III § 2; *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

4

(1992). "Constitutional standing is the threshold question in every federal case, determining the power of the court to entertain the suit." *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 184 (2d Cir. 2001) (internal quotation marks omitted). There are three constitutional standing requirements that every plaintiff must satisfy in order to invoke the jurisdiction of the federal courts: "(1) an injury in fact (*i.e.*, a concrete and particularized invasion of a legally protected interest); (2) causation (*i.e.*, a fairly . . . traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)." *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008) (internal quotation marks omitted).

It is settled law that "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see Leeke v. Timmerman*, 454 U.S. 83, 85-87 (1981); *Ostrowski v. Mehltretter*, 20 F. App'x 87, 90-91 (2d Cir. 2001) (summary order); *see also Weisshaus v. New York*, No. 08-CV-4053, 2009 WL 2579215, at *3 (S.D.N.Y. Aug. 20, 2009) ("Where a crime victim brings suit contesting the non-prosecution of the alleged perpetrator, courts have found that the victim lacks standing to do so."). A plaintiff must suffer an actual injury from the challenged activity in order to have standing. *Linda R.S.*, 410 U.S. at 617. A crime victim who sues to force the prosecution of the person who did her wrong was injured by that person, not by the failure to prosecute that person. *Id.* at 618. "[G]iven the special status of criminal prosecutions in our system," a crime victim cannot show a "direct nexus between the vindication of her interest and the enforcement of the State's criminal laws." *Id.* at 619. Simply

5

put, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Id.*

A crime victim also does not have standing to challenge the failure to investigate the crime. "The Court is not aware of a constitutional, statutory, or common law right that a private citizen has to require a public official to investigate or prosecute a crime. These are discretionary public duties that are enforced by public opinion, policy, and the ballot." *Doe v. Mayor & City Council of Pocomoke City*, 745 F. Supp. 1137, 1139 (D. Md. 1990); *see Weisshaus*, 2009 WL 2579215, at *3 (finding victim lacked direct injury from failure to investigate and prosecute grievances against attorney and noting that "reaching the same result – that a complainant or a crime victim lacks standing to object to a failure to investigate or prosecute the accused – other decisions have found that the complainant's injury is not fairly traceable to the failure to investigate, or that a prosecution or investigation would not redress the injury.").

Plaintiff acknowledges these principles of law but argues that the *vacatur* of the Order of Protection against Mr. Kelly is a legally cognizable injury for standing purposes. (*See* P's Opp. 18; Compl. ¶ 42.) But Plaintiff cites no authority for the proposition that the loss of a temporary protective order that was contingent on a criminal prosecution constitutes an injury-in-fact. The Order of Protection was issued at the discretion of the court for the pendency of the criminal action only. *See* N.Y. CPL § 530.13(1). Because it was merely a corollary to the prosecution of Mr. Kelly and rose or fell with the decision to prosecute, it is insufficient to confer standing. It would wholly undermine *Linda R.S.* and its progeny to allow through the back door of a challenge to the *vacatur* of the protective order what is not allowed through the front door of a

6

challenge to the prosecution decision.[5] *See Linda R.S.*, 410 U.S. at 619. Plaintiff may have benefitted from the Protective Order just as he may have benefitted from Mr. Kelly's prosecution, but he is still only a "collateral individual" who lacks standing to challenge decisions related to a criminal prosecution, including the *vacatur* of a protective order that flowed from the prosecution. *See United States v. Grundhoefer*, 916 F.2d 788, 791 (2d Cir. 1990) (finding that trustee representing certain creditors who were defrauded by criminal defendants was a "[c]ollateral individual[]" who lacked standing to challenge the restitution orders in defendants' criminal sentences that awarded some of defendants' ill-gotten gains to other creditors). Just as a crime victim suffers from the crime, not the prosecution decision, *see Linda R.S.*, 410 U.S. at 618, any fear or distress Plaintiff suffered was caused by Mr. Kelly's actions, not the issuance and then withdrawal of the Order of Protection.

Because Plaintiff has suffered no concrete, redressable injury traceable to the alleged actions of Defendants, Plaintiff lacks standing to bring these claims.

C. Absolute Immunity

In the alternative, the Court dismisses Plaintiff's claims under Rule 12(b) (6) because Defendants are shielded by absolute immunity. This ruling is proper at this motion to dismiss stage because the nature of Defendants' actions is clear from the face of Plaintiff's Amended Complaint. *See Shmueli*, 424 F.3d at 236.

---

[5] Nor is Plaintiff entitled to any of the so-called benefits conferred on him by Article 23 of the New York Executive Law such that his loss of crime victim status could constitute a concrete injury. (*See* Compl. ¶¶ 43-44; P's Opp. 19 n.7.) These benefits likewise rise or fall with the criminal prosecution and confer no benefit on their own. *See, e.g.*, N.Y. Exec. Law § 642(2) (providing the right for certain crime victims to have a waiting area separate from other witnesses at court appearances). In addition, many of the benefits are inapplicable to Plaintiff. *See, e.g.*, *id.* § 642(1) (applying only to victims of certain felonies)); *id.* § 642(2-a)(b) (applying only to victims of sex offenses)). Moreover, Article 23 does not intend to confer any rights on Plaintiff that would entitle him to relief against Defendants. *See id.* § 649.

Absolute immunity shields prosecutors from civil suits for damages arising from activities "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. The purpose of absolute immunity is to insulate from judicial scrutiny the motives and reasonableness of a prosecutor's officials acts. *Robinson v. Via*, 821 F.2d 913, 918 (2d Cir. 1987). Whether a defendant has absolute immunity depends on the function performed by the defendant (rather than the defendant's status as a prosecutor). *Imbler*, 424 U.S. at 430-31. A prosecutor has absolute immunity for "prosecutorial" actions but only has qualified immunity when acting in an "investigative" or "administrative" role. *Van de Kamp v. Goldstein*, 555 U.S. 335, 340-43 (2009) ("[A]bsolute immunity may not apply when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in other tasks, say, investigative or administrative tasks."); *see Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

A prosecutor's decision not to prosecute is quintessentially "prosecutorial" and is protected by absolute immunity. *Schloss v. Bouse*, 876 F.2d 287, 290 (2d Cir. 1989); *see In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 97 (2d Cir. 2007). As the Second Circuit has explained, granting prosecutors absolute immunity for such decisions furthers important goals. Immunity allows prosecutors to focus on the enforcement of criminal law instead of the potentially "intolerable burdens" of having to defend their decisions against civil suits. *Schloss*, 876 F.2d at 290-91. Immunity also avoids skewing prosecutors' decision-making by "tempting [them] to consider the personal ramifications of [their] decision[s] rather than rest [those] decision[s] purely on appropriate concerns." *Id.*; *see Imbler*, 424 U.S. at 424-25 ("The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages."). Thus, prosecutors are immune from suit even where, as here, it is alleged that their prosecutorial

decisions were based on improper political reasons. *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503-05 (2d Cir. 2004).

Plaintiff does not dispute any of these well established points of law. Rather, he argues that Defendants' actions are investigatory, not prosecutorial, and therefore not entitled to absolute immunity. (P's Opp. 21-23.) Specifically, Plaintiff contends that "an essential component of the allegedly wrongful scheme was the purported 'return' of the [Kelly] matter to the Police Department for 'further investigation and review,'" that no additional investigation was performed, and that this failure to further investigate was "investigatory" in nature. (*Id.* at 22.) But Plaintiff's theory is that Mr. Kelly's wife used her political connections to persuade District Attorney Janet DiFiore to make the case "go away" and that no further investigation was ever intended. (Compl. ¶¶ 28-30.) What Plaintiff is really complaining of is Defendants' decision to not prosecute Mr. Kelly. Plaintiff's reframing of this decision as a failure to continue the investigation does not make any of Defendants' actions investigatory (particularly where any further investigation was purportedly to have been done by the police, not the prosecutors). Rather, Plaintiff's claims have nothing to do with anything Defendants did (if they did anything at all) during the investigation stage of the Kelly case. *See Schnitter v. City of Rochester*, 931 F. Supp. 2d 469, 474 (W.D.N.Y. 2013) ("Plaintiff here attempts to cast this claim in terms of an alleged failure to conduct a thorough investigation, but that does not render the complained-of conduct 'investigatory' in nature. At bottom, plaintiff's claim rests upon the prosecutor's decision to charge plaintiff with a crime.").

*Hogan v. County of Lewis, N.Y.*, 929 F. Supp. 2d 130 (N.D.N.Y. 2013), cited by Plaintiff for the proposition that prosecutors are not entitled to absolute immunity for a failure to investigate (P's Opp. 22), does not support Plaintiff's position. In that case, plaintiffs alleged

9

that prosecutors instructed local police officers "not to accept or investigate a criminal complaint" made by plaintiffs. *Hogan*, 929 F. Supp. 2d at 150. The *Hogan* court held that the prosecutors' failure to permit any investigation in response to plaintiffs' complaints was investigatory, rather than prosecutorial. *Id.* In this case, in contrast, there was an investigation based on Plaintiff's complaint, and no allegation that the District Attorney's office interfered with it in any way. (*See* Compl. ¶¶ 17-21.) Nothing entitled Plaintiff to further investigation after the District Attorney's office ultimately decided not to go forward with the prosecution.

Nor does Defendant Lloyd's representation to the court at the May 10, 2010 hearing that the Kelly case would be turned over to the police department for further investigation (even if she intended to mislead, as Plaintiff alleges, *see id.* ¶ 41) constitute an investigatory act to which absolute immunity does not attach. A prosecutor's conduct in court is the paradigmatic prosecutorial act. *See Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012).

Finally, Plaintiff's argument that Defendants "in effect [were] questioning [their] prior determination of 'probable cause'" and this made their actions "investigatory" in nature, (P's Opp. 22-23), is unpersuasive. In *Buckley v. Fitzsimmons*, the Supreme Court stated that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." 509 U.S. at 274.[6] Consistent with that rule, the Supreme Court has held that absolute immunity does not protect a prosecutor's actions during the early stages of a case, such as "when a prosecutor gives advice to police during a criminal investigation . . . or when a prosecutor acts as a complaining witness in support of a warrant application." *Van de Kamp*, 555 U.S. at 343 (internal citations omitted). That does not mean, however, that after a prosecutor has stepped into his or her prosecutorial role, the mere act of questioning whether the

---

[6] The Court notes also that it is Plaintiff's position that there *was* probable cause and that Mr. Kelly should have been prosecuted and would have been but for Ms. Ramos-Kelly's phone call.

10

prosecution should continue will make the prosecutor's subsequent actions "investigatory" in nature.  Because the decision to charge is an either-or proposition, a prosecutor's decision not to charge is protected by absolute immunity, just as is a decision to charge.  *Schloss*, 876 F.2d at 290.  Plaintiff suggests no reason why the rule should be different for a decision to drop charges, and none is apparent to the Court.  The same reasons that animate protection for the decision to prosecute or not, *see Imbler*, 424 U.S. at 424-25, apply to the decision to drop charges, *see Anderson v. Larson*, 327 F.3d 762, 768-69 (8th Cir. 2003) (holding that prosecutor was absolutely immune for decision to drop charges); *Ross Yordy Constr. Co. v. Naylor*, 55 F.3d 285, 287 (7th Cir. 1995) (same).

    D.  <u>Leave to Amend</u>

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended his complaint, (*see* Docs. 1, 15), in response to Defendants' pre-motion letter, (*see* Doc. 4), and my observation during a conference that his claims had standing and immunity issues.  Plaintiff's failure to fix these deficiencies, after being provided with full notice of them, is alone sufficient ground to deny leave to amend *sua sponte*. *See In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005), *aff'd*

*sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007). Furthermore, here the reason for dismissal is substantive, and better pleading would not lead to a different result. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Ariel (UK) Ltd. v. Reuters Grp., PLC*, 277 F. App'x 43, 45-46 (2d Cir. 2008) (summary order) (district court did not exceed its discretion in not *sua sponte* granting leave to amend where plaintiff had already amended complaint once and amendment would have been futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (leave to amend should be denied as futile where problem with complaint is substantive and better pleading would not cure it); *Payne v. Malemathew*, No. 09-CV-1634, 2011 WL 3043920, at *5 (S.D.N.Y. July 22, 2011) ("That Plaintiff was provided notice of his pleading deficiencies and the opportunity to cure them is sufficient ground to deny leave to amend *sua sponte*."). Accordingly, there being no indication that Plaintiff is in possession of facts that could cure the problem, I decline to grant Plaintiff leave to amend *sua sponte.*

### III. Conclusion

For the reasons stated above, Defendants' Motion to Dismiss the Amended Complaint is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 26), and close the case.

**SO ORDERED.**

Dated: October 2, 2013
      White Plains, New York

                                              _____
                                              CATHY SEIBEL, U.S.D.J.